IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-33-BO

| | |
|---|---|
| AMY FRENCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings. [DE 24 & 27]. The underlying dispute involves the plaintiff's challenge to the defendant's decision denying her benefits under the Social Security Act. A hearing on this matter was held in Edenton, North Carolina on December 18, 2012. For the reasons discussed below, plaintiff's motion is GRANTED, defendant's motion is DENIED, and, accordingly, the judgment of the Administrative Law Judge is REVERSED.

## BACKGROUND

Plaintiff filed an application for disability and disability insurance benefits on August 27, 2008, alleging an onset date of December 31, 2007. Her claim was denied initially and upon reconsideration. On May 19, 2010, the claimant appeared before an Administrative Law Judge (ALJ). Following the administrative hearing, the ALJ issued a decision finding that the plaintiff was not disabled at step five of the appropriate five-step sequential disability evaluation process. On July 1, 2011, the Appeals Council denied the plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff Amy French now seeks review of the Commissioner's final decision pursuant to 42 U.S.C § 405(g).

1

## MEDICAL HISTORY

Plaintiff allegedly suffers from an organic mental disorder resulting from traumatic injuries inflicted during a car crash in May, 2005. Upon discharge from the hospital following the accident, the plaintiff was diagnosed with severe traumatic encephalopathy, left frontotemporal parietal contusion and facial fractures, post-traumatic amnesia, history of pulmonary embolism, oral dysphagia, multiple facial lacerations, anemia, anxiety, and anosmia. [Tr. 277]. The injuries were extensive. Following the accident, the plaintiff reported being treated in eight different hospitals and suffering from debilitating migraine headaches and seizures.

It became clear that the claimant was unable to manage her own finances and her uncle was appointed as her conservator. He now manages her finances and provides her with $600.00 in cash per month to cover living expenses. Although she once owned and managed a business with revenue of $2M annually, she often is unable to properly budget this allowance. Additionally, the plaintiff has testified that since the accident she tires very easily and often takes naps in the middle of the day. At times she has difficult finishing tasks because she gets too tired [Tr. 45-47].

The plaintiff's current condition is in stark contrast to her capabilities demonstrated prior to the accident. The multilingual plaintiff holds two Master's degrees and has past work as the CEO of a translation company, a writer, a translator, a project manager, and a marketing director. [Tr. 49-50]. The plaintiff made one unsuccessful attempt to return to work following the accident. However, the plaintiff was unable to remember how to complete even simple tasks and had to be reminded how to use the cash registers on a daily basis. [Tr. 47]. The job and its associated challenges caused her significant stress, which would trigger migraine headaches.

After being treated for migraines and seizures in 2007 and 2008, Ms. French underwent a neurobehavioral exam with Dr. Antonio Puente, Ph.D. Ms. French reported during that exam that she was unemployed and living off the proceeds of the sale of her translation company. During that exam, Dr. Puente noted that she had a slow response time in her communication. [Tr. 1060]. In July, Ms. French underwent neuropsychological testing with Dr. Puente. Dr. Puente noted that the claimant had difficult completing the various tests, had slow responses, required a great deal of support, and was late for the testing sessions after being given a break. After extensive testing, Dr. Puente reported that she was "somewhat slow" with a significant executive dysfunction problem. [Tr. 1057]. Dr. Puente observed the following: Ms. French's ability to focus was somewhat challenged, her memory capability was in the first percentile, and her overall intelligence was in the lower tenth percentile range. Further, Dr. Puente reported that the plaintiff had very little understanding of her situation and that she easily meet the listing requirements of 12.02(A) and (B).

In December, 2008, Ms. French sought migraine treatment from Dr. Wiese. Although the claimant has been suffering from migraines since she was 13, Dr. Wiese reported that she had been taking her Topamax incorrectly, and it took her some time to process his instructions. [Tr. 1207-08].

In August, 2009, Ms. French underwent additional neuropsychological testing with Dr. Puente. After extensive testing, Dr. Puente reported, ". . . at the present time she appears to be experiencing moderate to severe neuropsychological symptoms with even more significant impairment in activities of daily living. . . This is a permanent condition that on it own appears unlikely to change. The likelihood of any type of employment is low." [Tr. 1235].

Ms. French saw Dr. Puente again on March 31, 2010. At that point, Dr. Puente noted:

3

> I want to make sure that the attorney involved in the social security case understands how permanently and totally disabled she is due to brain injury. . . . Encouraged the Social Security Disability at ALJ[sic] . . . to understand that she meets 12.02 criteria at the highest level and meets several of the part B listing, including pace and persistence and the lack of structure unless it is externally imposed. Prognosis in this case is very poor in terms of returning to gainful employment. [Tr. 1237-1238].

In its memo in support of its motion for judgment on the pleadings the defendant focuses on one line of Dr. Puente's report from this appointment: "This is generally considered to be within the margin of error and does not suggest significant impairment or deterioration of cognitive function." [Tr. 1233]. Reading Dr. Puente's report as a whole, in context, and noting Dr. Puente's grave concern for the claimant throughout the record, this statement simply indicates that Ms. French's cognitive abilities had not declined since the last time she underwent neuropsychological testing.

Ms. French's stepfather, Charles Williams, submitted a third party function reported that set forth numerous ways in which the claimant was unable to function in daily life. She had difficulty grocery shopping, she had little contact with other people, she seemed withdrawn, she spent most of her time at home watching television, and she was completely unable to handle her finances without the help of her uncle. [Tr. 213-237].

Mr. Williams was responsible for securing Ms. French her brief employment at J.C. Penney's. On May 10, 2010, Mr. Williams submitted a sworn statement detailing all of the difficulties Ms. French had while attempting to work at the department store. Among those difficulties were her inability to remain on her feet for an entire work shift, and that she had to be re-taught daily how to use the cash registers and process credit card transactions.

Ms. French's father, Jeffrey Steingold, also concerned about the claimant's condition, wrote letters to Dr. Puente that detailed the claimant's difficulties in daily functioning. Mr. Steingold explained that his daughter was unable to remember current events, the names of her

4

doctors, or her phone number and address. He also stated that she was unable to translate languages, as she had done before the accident, and that she frequently got lost. Mr. Steingold also commented that she was unable to maintain a clean home or care for her pets. [Tr. 255-56]. In a later letter, Mr. Steingold recounted a time when Ms. French had gotten lost on her way to a familiar restaurant and missed an important dinner with her children. [Tr. 248].

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)(quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. The analysis requires the ALJ to consider the following five factors sequentially: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment or a combination of impairments that are severe; (3) whether the claimant's medical impairment meets or equals the requirements of a disability listed in the social security regulations; (4) whether the claimant can perform other work. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

5

Here, the ALJ erred by concluding at step three that the claimant was not suffering from an impairment meeting the requirements of an impairment listed in the social security regulations. The listing considered by the ALJ is found at 12.02. Pursuant to that listing the required showing to establish disability includes:

    A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documents persistence of at least one of the following:
1. Disorientation to time and place; or
2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
3. Perceptual or thinking disturbances (e.g. hallucinations, delusions); or
4. Change in personality; or
5. Disturbance in mood; or
6. Emotional lability (e.g. explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, . . .

AND

    B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

It is undisputed that the claimant has exhibited the behavioral patterns set forth in paragraph A of the listing. However, the ALJ found that the claimant had not shown any of the marked restrictions set forth in paragraph B. As noted by ALJ Haack, marked means a restriction that is more than moderate, but less than extreme. [Tr. 23]. The ALJ found that the claimant was mildly restricted in activities of daily living, experienced moderate difficulties with social functioning, had moderate difficulties in maintaining concentration, persistence or pace, and had only experienced one episode of decompensation of extended duration. However, substantial evidence does not support these findings. Rather, the evidence supports a finding that the claimant has met at least two of the three categories of marked restrictions listed in paragraph B.

6

First, although the plaintiff has been able to maintain an outwardly pleasant and hygienic appearance, the evidence establishes that she has experienced other marked restrictions in her activities of daily living. For example, her inability to manage her finances without the help of her uncle is evidence of marked restrictions. The record reflects that although she was given $600.00 per month to pay for living expenses she would run out of cash before the end of the month. For a woman who was previously multilingual and managed her own company this is evidence of a marked, if not severe, restriction in her ability to function. Finally, her inability to navigate her way to a familiar location for an important event is especially troubling. ALJ Haack did not consider how someone with such a limitation might be able to commute to work in an unfamiliar location. Although Ms. French may be able to complete some activities of daily living without event – putting on make-up –, it is clear that her overall ability to function is significantly impaired. The substantial evidence supports a finding that the claimant experienced marked, if not severe, restrictions in her activities of daily living.

Additionally, the claimant suffers from a marked restriction in her ability to maintain concentration, persistence, and pace. This is most evidenced by her unsuccessful attempt to work at J.C. Penney's. The plaintiff was unable to grasp simple tasks such as the operation of a cash register or credit card machine. This difficulty is noted by Dr. Puente who stated that she had difficulty completing many of the tests he administered and lost track of time causing her to arrive late for her testing sessions. Dr. Puente's observations are corroborated by the claimant's stepfather who noted that the claimant is unable to go shopping without a list because she will wander the aisles without purpose. The ALJ points to several tests administered by Dr. Puente as evidence that the claimant is not suffering from a marked restriction. However, read in the context of Dr. Puente's notes and observations of the claimant those few tests do not support a

7

conclusion that the plaintiff does not have a marked restriction in her ability to concentrate and persist.

Finally, the claimant suffers from a marked restriction in her ability to maintain social functioning. The plaintiff has become increasingly isolated over time and has further withdrawn from her social network. Notably, the claimant was unable to maintain a relationship with her boyfriend. Although the ALJ noted that the plaintiff keeps in touch with many friends, the remainder of the record establishes that Ms. French has significant difficulty maintaining social ties. In fact, Dr. Puente noted that she is not able to grasp the full extent of her own situation; such a lack of self-awareness is not conducive to the formation of personal relationships. The plaintiff's increasingly strained relationship with her children is also evidence of this restriction. The substantial evidence supports a finding that the plaintiff suffers from a marked restriction in her ability to maintain social functioning.

Evaluating the record as a whole, the substantial evidence does not support the ALJ's finding that the claimant's mental impairments do not cause at least two of the marked restrictions listed in 12.02(B). The evidence supports a finding that the claimant suffers from marked restrictions in her activities of daily living, marked restrictions in her ability to maintain social functioning, and marked restrictions in her ability to concentrate and persist.

Plaintiff met her burden at step three by showing that her condition met the listing found at 12.02(A) and (B), and is therefore disabled. Because the ALJ did not correctly apply the regulations, the decision was not supported by substantial evidence. Therefore, the ALJ's decision at step three is reversed.

8

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings is GRANTED, and the decision of the Commissioner is REVERSED. The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court." *Edwards v, Bowen*, 672 F.Supp. 230, 236 (E.D.N.C. 1987). Accordingly, this case is REMANDED for an award of benefits.


SO ORDERED.

This 5 day of February, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE